United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTYANN THORP, et al.,

      Plaintiffs,

  v.

EDUCAP, INC., et al.,

      Defendants.

_____/

No. C-13-3830 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EDUCAP, INC.'S MOTION TO DISMISS; AFFORDING PLAINTIFFS LEAVE TO AMEND**

Before the Court is defendant EduCap Inc.'s ("EduCap") Motion to Dismiss, filed September 24, 2013.[1]  Plaintiffs Kristyann Thorp, Michael L. Suechting, and Barbara Suechting have filed opposition, to which EduCap has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

The following facts are either taken from the complaint and assumed true for purposes of the instant motion, or are taken from documents referenced in the complaint

---

[1]By order filed November 4, 2013, the Court approved a stipulation to dismiss plaintiffs' claims against defendant Trans Union LLC ("Trans Union"); the two other defendants, Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"), have answered the complaint.

[2]By order filed November 5, 2013, the Court took the matter under submission.

1    and filed by EduCap in connection with its motion to dismiss.[3]

2         In 2006, plaintiffs jointly applied for a student loan from EduCap, and EduCap loaned

3    plaintiffs the amount of $15,000.  (See Compl. ¶ 10; Martin Decl. Ex. 1.)  Plaintiffs made

4    payments for "an extended period," but after they "fell behind" on their payments, EduCap,

5    in August 2010, "filed a collection action" in state court.  (See Compl. ¶ 11.)  In October

6    2011, the parties to the state court action reached a settlement, the terms of which they

7    placed on the record (see Compl. ¶ 12), and they thereafter signed two documents to

8    memorialize the settlement agreement (see id.; Martin Decl. Ex. 2).

9         The material terms of the settlement agreement, as placed on the record in state

10   court on October 28, 2011, are as follows:  payment by plaintiffs to EduCap in the amount

11   of $100 each month beginning in November 2011 and continuing for a period of eighteen

12   months, and thereafter in the amount of $250 each month until payment of the outstanding

13   principal, $14,868.22, is made in full (see Compl. Ex. A at 9:12-15, 9:28 - 10:8); as long as

14   plaintiffs make the requisite payments, no interest is due (see id. Ex. A at 9:17-18); and, in

15   the event plaintiffs fail to make timely payments, EduCap is entitled to obtain, on an ex

16   parte basis, judgment on its claim for the principal, plus interest at the rate of 10%, less

17   credit for any payments made under the settlement agreement (see id. Ex. A. at 10:11-14).

18        On October 28, 2011, plaintiffs and counsel for EduCap signed a handwritten one-

19   page document summarizing the terms they had placed on the record.  (See id. Ex. B.)

20   Thereafter, plaintiff signed a "Stipulation for Compromise Settlement,"[4] which document

21   includes two additional terms:  after plaintiffs make the final payment due under the

22   settlement agreement, EduCap will dismiss with prejudice its state court complaint (see

23

24        [3]Plaintiffs do not dispute the authenticity of or otherwise object to the documents
25   submitted by EduCap.

26        [4]The copy of said Stipulation filed by EduCap does not include a signature by
     anyone on behalf of EduCap.  Because EduCap asserts the copy is a "true and correct
27   copy of the settlement agreement" (see Miller Decl. ¶ 7), the Court, for purposes of the
     instant motion, assumes that either an agent for EduCap signed the Stipulation or EduCap
28   has otherwise agreed to the bound thereby (see Pls.' Opp'n at 2:20-22 (referring to
     Stipulation as "the agreement")).

2

1    Miller Decl. Ex. 2 at ¶ 3); and counsel for EduCap "will notify [EduCap] to correct [illegible]

2    reporting on credit report regarding all defendants [illegible]" (see id. Ex. 2 at ¶ 6).[5]

3            Plaintiffs have made each payment due under the settlement agreement on a timely

4    basis.  (See Compl. ¶ 13.)  EduCap, however, has reported to credit reporting agencies

5    Experian, Equifax, and Trans Union that plaintiffs' account is "past due in the approximate

6    amount of $20,026," that plaintiffs' monthly payment is "$6,126," and that plaintiffs are "180

7    days late making payments over the period October 2001 to date."  (See Compl. ¶ 14.)

8    Experian, Equifax, and Trans Union have published in their respective credit reports the

9    information submitted to them by EduCap "since October 2011."  (See Compl. ¶ 15.)

10           Plaintiffs have sent "dispute letters" to Experian, Equifax, and Trans Union" (see

11   Compl. ¶ 17), each of which credit reporting agencies, in turn, notified EduCap that

12   plaintiffs "were disputing the account" (see Compl. ¶ 19).  EduCap thereafter sent Experian,

13   Equifax, and Trans Union "verifications that its credit reporting was accurate" (see id.), and

14   Experian, Equifax, and Trans Union then sent plaintiffs "notices that they would not change

15   their reporting on the account" (see Compl. ¶ 18).  Plaintiffs applied for and were denied

16   loans and extensions of credit "based on" the information reported in the credit reports.

17   (See Compl. ¶¶ 23, 24.)

18                                   **LEGAL STANDARD**

19           Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

20   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

21   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

22   1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

23   showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

24   544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

25   a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

26   _____

27           [5]In addition to the two additional terms, the Stipulation for Compromise Settlement
     differs from the terms placed on the record and in the prior writing in that it requires
28   plaintiffs to pay EduCap $100 each month beginning in November 2011 and continuing for
     a period of sixteen, rather than eighteen, months.  (See id. Ex. 2 at ¶ 1.)

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

**DISCUSSION**

In their complaint, plaintiffs allege that EduCap has violated the Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code §§ 1785.1-1785.35; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§ 1788-1788.33. EduCap argues each claim alleged against it is subject to dismissal.

At the outset, the Court notes that plaintiffs do not oppose dismissal of their

4

1  RFDCPA claim.  (See Pls.' Opp'n at 8:17-20.)  Accordingly, to the extent the motion seeks

2  dismissal of the Third Claim, the motion will be granted.[6]

3       The Court turns to the two remaining claims alleged against EduCap.

4  **A.  Claim under Consumer Credit Reporting Agencies Act**

5       The CCRAA provides, in relevant part, that a "person shall not furnish information

6  on a specific transaction or experience to any consumer credit reporting agency if the

7  person knows or should know the information is incomplete or inaccurate."  See Cal. Civ.

8  Code § 1785.25(a).  For purposes of the CCRAA, information is "incomplete or inaccurate"

9  if the information is "patently incorrect, or because it is misleading in such a way and to

10  such an extent that it can be expected to adversely affect credit decisions."  See Carvalho

11  v. Equifax Information Services, LLC, 629 F.3d 876, 889-91 (9th Cir. 2010).

12       In the Second Claim, plaintiffs allege EduCap has reported incomplete or inaccurate

13  information, specifically, that plaintiffs are "past due" in the amount of $20,026, that

14  plaintiffs owe a monthly payment of $6126, and that the account is 180 days past due.

15  (See Compl. ¶¶ 14, 18, 38.)  According to plaintiffs, EduCap began making such reports in

16  October 2011 and, "to date," has continued to make such reports (see Compl. ¶ 14); as the

17  complaint was filed August 19, 2013, plaintiffs' allegations, assumed true at the pleading

18  stage, are that EduCap furnished the information described in the complaint to credit

19  reporting agencies through that date.

20       In its motion to dismiss, EduCap does not address the above-cited information

21  identified in the complaint.  Rather, EduCap offers a copy of each plaintiff's credit report as

22  prepared by Experian in September 2013, and argues the information in those particular

23  monthly reports is complete and accurate.  Although not clearly expressed, EduCap

24  implies the Court should assume the information in the more recent Experian credit reports

25

26

27

28
    [6]In agreeing that EduCap has shown the Third Claim is subject to dismissal, plaintiffs do not indicate whether they seek leave to amend.  In its motion, EduCap argues that reporting information to a credit reporting agency about a debt does not constitute "debt collection" under the RFDCPA.  Because such argument pertains to a legal deficiency, as opposed to a pleading deficiency, leave to amend would appear to be futile.

1    is the same information it provided to Experian, as well as to Equifax and Trans Union,

2    beginning in October 2011.  EduCap fails to explain, however, how the Court, in the context

3    of a motion to dismiss, can or should draw should an inference.  See Twombly, 550 U.S. at

4    555 (holding when district court addresses motion to dismiss, it must do so "on the

5    assumption that all the allegations in the complaint are true (even if doubtful in fact)")

6        Nevertheless, as both parties have directed their arguments to the question of

7    whether the information in the September 2013 credit reports is complete and accurate, the

8    Court next considers whether EduCap has shown the information in those credit reports is,

9    as a matter of law, complete and accurate.

10        The September 2013 credit reports state that the "current balance" on the student

11   loan is $19,933, that plaintiffs have a "scheduled payment" of $212, that plaintiffs are "past

12   due" in the amount of $5676, and that the "payment status" is "180 days past due."  (See

13   Martin Decl. Ex. 3 at fourth page, Ex. 4 at third page, and Ex. 5 at third page.)[7]  Plaintiffs

14   contend such information is incomplete and inaccurate because it does not take the

15   settlement agreement into account; as noted, plaintiffs allege they are current on their

16   obligations under the settlement agreement.  EduCap, on the other hand, argues that

17   because the settlement agreement does not obligate EduCap to "bring [p]laintiffs' account

18   to current" and because plaintiffs "remain in arrears on the original terms" (see Def.'s Mot.

19   at 7:8-11), EduCap's reports are complete and accurate.

20        Neither party has cited to any case addressing the proper manner of reporting

21   obligations under circumstances similar to those presented here.  Consequently, the Court

22   considers whether the reports are complete and accurate under the general standard set

23   forth above.  See Carvalho, 629 F.3d at 889-91 (holding information is "incomplete or

24   inaccurate" if it is "patently incorrect, or because it is misleading in such a way and to such

25

26        [7]The reports contain additional information not explicitly addressed by the parties.
     For example, with respect to "payment history," the reports show "6" for the month of
27   August 2013 and the twenty-four months prior thereto; no party explains the significance of
     any such code.  (See id.)  As another example, the reports show $16,500 as the "original
28   amount" of the student loan (see id.), which information appears to be incorrect, given that
     both parties state the original amount was $15,000 (see Compl. ¶ 10; Martin Decl. ¶ 5).

1   an extent that it can be expected to adversely affect credit decisions").

2        Plaintiffs' duties to EduCap arise by virtue of a contract.  Prior to October 2011,

3   plaintiffs' contractual duties were those set forth in the parties' loan agreement.  The parties

4   subsequently decided, however, to resolve their dispute with respect to plaintiffs'

5   performance thereunder by entering into a settlement agreement.  Irrespective of whether

6   the settlement agreement is properly understood as modifying the terms of the parties'

7   initial agreement or substituting a new agreement in its place, the only contractual duties

8   plaintiffs currently owe to EduCap are those set forth in the settlement agreement, and

9   there is no contention that plaintiffs have failed to comply with its terms.

10        As noted, the credit reports state that plaintiffs are "past due" in the amount of $5676

11   and are "180 days past due."  The Court declines to find at the pleading stage that such

12   information, is, as a matter of law, complete and accurate.  In particular, EduCap has failed

13   to show that a trier of fact could not reasonably find potential creditors reviewing the reports

14   would be left with the impression that plaintiffs are currently in default on an obligation in

15   the amount of $5676 and that such obligation has been due and owing for a period of six

16   months.  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009)

17   (holding information in consumer report "may be deemed 'inaccurate' if the statement is

18   presented in such a way that it creates a misleading impression") (internal quotation and

19   citation omitted).  Further, because EduCap fails to explain how it calculated a "current

20   balance" of $19,933, and the factual basis for such calculation is not apparent from the

21   complaint or any document submitted by EduCap, the Court cannot determine at the

22   pleading stage that the information EduCap provided to Experian pertaining to the "current

23   balance" is, as a matter of law, complete and accurate.

24        EduCap next argues that plaintiffs fail to adequately allege injury.  The Court

25   disagrees.  As noted, plaintiffs allege they applied for and were denied loans and credit

26   "based on" the assertedly incorrect information EduCap has provided to credit reporting

27   agencies.  (See Compl. ¶¶ 23, 24.)  Although EduCap argues plaintiffs need to plead the

28   alleged denials with greater specificity, the case on which EduCap relies for such argument

1    is distinguishable on its facts.  See Reagan v. American Home Mortgage Servicing Inc.,

2    2011 WL 2149100 (N.D. Cal. May 31, 2011) (holding plaintiffs failed to adequately plead

3    damages where plaintiffs' inability to obtain financing was alleged to have occurred prior to

4    defendant's alleged failure to correct inaccurate report).

5          EduCap further argues that plaintiffs fail to adequately plead a willful violation of the

6    CCRAA.  See Cal. Civ. Code 1785.31 (setting forth additional remedies available "[i]n the

7    case of a willful violation").  The Court again disagrees.  "[C]onditions of a person's mind"

8    may be pleaded generally.  See Fed. R. Civ. P. 9(b).  Moreover, the term "willful," as used

9    in California's civil statutes, means no more than "the person knows what he is doing,

10   intends to do what he is doing, and is a free agent"; it "does not necessarily imply anything

11   blamable, or any malice or wrong toward the other party, or perverseness or moral

12   delinquency."  See Ibrahim v. Ford Motor Co., 214 Cal. App. 3d 878, 894 (1990).  Here,

13   plaintiffs allege that EduCap, after entering into the settlement agreement through an agent

14   with authority to do so (see Compl. ¶ 12), has, in essence, reported to credit reporting

15   agencies that plaintiffs are not in compliance with their loan agreement (see Compl. ¶ 14),

16   despite its knowledge that plaintiffs, under the terms of the settlement agreement, are no

17   longer required to comply with the terms of the loan agreement (see Compl. Exs A, B).

18   Such allegations are sufficient to plead willfulness.

19         Finally, EduCap cites to the "safe harbor set forth in [the CCRRA]" (see Def.'s Mot.

20   at 9:26 - 10:1), under which an entity that furnishes incomplete or inaccurate information

21   nonetheless is not liable if, at the time of the violation, it "maintained reasonable

22   procedures to comply with [the CCRAA]," see Cal. Civ. Code § 1785.25(g).  EduCap

23   states, without further elaboration, that it "maintains 'reasonable procedures to comply' with

24   [the CCRRA]."  (See Def.'s Mot. at 9:26 - 10:1.)  EduCap, however, has the burden to

25   establish, by a preponderance of the evidence, that it maintained such procedures, see

26   Cal. Civ. Code § 1785.25(g), and, consequently, resolution of any defense arising under

27   § 1785.25(g) is premature at the pleading stage.

28         Accordingly, EduCap has failed to show the Second Claim is subject to dismissal.

8

**B.  Claim under Fair Credit Reporting Act**

In the First Claim, plaintiffs allege EduCap violated a subsection of the FCRA, specifically, 15 U.S.C. § 1681s-2(b).

The FCRA provides that a "person shall not furnish information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." See 15 U.S.C. § 1681s-2(a)(1)(A).  Unlike the CCRAA, however, the FCRA does not provide a private cause of action against a furnisher for providing inaccurate information.  See Gorman, 584 F.3d at 1155 (holding "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies").  What the FCRA does provide is a private cause of action for violations of certain duties imposed on the furnisher "upon notice of a dispute from a [credit reporting agency]."  See id. (citing 15 U.S.C. § 1681s-2(b)).

Specifically, the FCRA provides that if a credit reporting agency notifies a furnisher that a consumer has disputed "the completeness or accuracy" of information provided by the furnisher, the furnisher must do the following:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency . . .;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

See 15 U.S.C. § 1681s-2(b)(1).  Additionally, to comply with § 1681s-2(b), the investigation must be "reasonable" and "non-cursory."  See Gorman, 584 F.3d at 1157; see also id. at 1155 (noting with approval Fourth Circuit's holding that a "superficial, *un*reasonable inquiry

9

would hardly satisfy Congress' objective," which is "to give consumers a means to dispute – and ultimately correct – inaccurate information on their credit reports") (internal quotation, citation, and alteration omitted) (emphasis in original).

EduCap argues that plaintiffs fail to provide sufficient notice of the basis for their allegation that EduCap violated § 1681s-2(b).  As pleaded, the First Claim consists of incorporations by reference of earlier-pleaded allegations coupled with legal conclusions. (See Compl. ¶¶ 31-36.)  Plaintiffs argue that sufficient notice is provided in light of such earlier-alleged facts, specifically, that EduCap continued to provide the same information to the credit reporting agencies after it received notice of plaintiffs' dispute.  (See Compl. ¶¶ 14, 17-18.)  According to plaintiffs, it can be inferred from such factual allegations that any investigation EduCap conducted was unreasonable because EduCap did not thereafter alter the manner in which it reported the information.

Plaintiffs' reliance on their allegation that EduCap has continued to report inaccurate information is, standing alone, insufficient to state a claim that EduCap failed to conduct a reasonable investigation.  See Gorman, 584 F.3d at 1161 (noting "the requirement that furnishers investigate consumer disputes is procedural"; holding "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate").  Indeed, allowing a consumer to base a claim under § 1681s-2(b) solely on an allegation that the furnisher, after conducting an investigation, did not provide accurate information would undermine Congress' intent not to provide a private cause of action for furnishing inaccurate information.  See Evans v. General Electric Co., 2012 WL 332446 (S.D. Ga. February 1, 2012) (dismissing FCRA claim against furnishers where plaintiff alleged furnishers provided inaccurate information to credit reporting agency but did not allege any "facts suggesting the [furnishers] failed to conduct the required investigation"; holding plaintiffs "cannot backdoor a claim under § 1681s-2(a) through § 1681s-2(b)").

Accordingly, the First Claim is subject to dismissal, and the Court will afford plaintiffs leave to amend to allege, if they can, sufficient facts to support a finding that EduCap

10

1  violated one or more of the duties identified in § 1681s-2(b).

2  **CONCLUSION**

3      For the reasons stated above:

4      1.  EduCap's motion to dismiss is hereby GRANTED in part and DENIED in part, as

5  follows:

6          a.  To the extent the motion seeks dismissal of the First and Third Claims, the

7  motion is GRANTED.

8          b.  To the extent the motion seeks dismissal of the Second Claim, the motion is

9  DENIED.

10     2.  In the event plaintiffs wish to amend their First Claim, plaintiffs shall file any First

11  Amended Complaint no later than November 22, 2013.  In any First Amended Complaint,

12  plaintiffs may amend to cure the deficiencies noted above with respect to said First Claim,

13  but may not add new claims without first obtaining leave of court.  See Fed. R. Civ. P.

14  15(a)(2).

15     4.  If plaintiffs do not file a First Amended Complaint within the time provided, the

16  instant action will proceed on the remaining claims in the complaint, specifically, the First

17  and Fourth Claims, and EduCap is directed to file an answer said complaint no later than

18  December 6, 2013.

19     **IT IS SO ORDERED.**

20

21  Dated:  November 6, 2013

22                                          MAXINE M. CHESNEY
                                            United States District Judge

23

24

25

26

27

28

11